IN THE U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CHARLES W. STRUBE, et al.,

       Plaintiffs,

v.

AMERICAN EQUITY INVESTMENT
LIFE INSURANCE COMPANY, et al.,

       Defendants.

_____/

Case No.: 6:01-cv-1236-Orl-19DAB

**CLASS REPRESENTATION**

## <u>PLAINTIFFS' MOTION FOR AWARD OF ATTORNEY'S FEES<br>WITH INCORPORATED MEMORANDUM OF LAW<sup>•</sup></u>

Plaintiffs CHARLES W. STRUBE, *et al.*, pursuant to <u>Fed. R. Civ. P.</u> 23(h) and Middle

District of Florida Local Rules 3.01 and 4.18, move for an award of attorney's fees and costs and

say:

1.      Pursuant to Section VIII of the stipulation of settlement, as amended, plaintiffs'

counsel has agreed to apply to the Court for an award of attorney's fees not to exceed

$1,700,000.00, and AMERICAN EQUITY has agreed to pay such fees. (DE 188, 200, 233)

2.      The settlement has now received final approval and the Court has reserved

jurisdiction to assess fees and costs.

3.      Prior to receiving *preliminary* approval, plaintiffs filed a separate motion for fees

with incorporated memoranda of law, which it later amended. (DE 194, 198)  Copies of the

motion and amended motion are attached hereto as Exhibits "A" and "B."

---

<sup>•</sup>    This motion is not opposed by defendant AMERICAN EQUITY, which has
agreed to pay the requested attorney's fee and expense amount over and above the relief afforded
to the Class.  Defendant AMERICAN EQUITY will therefore submit no response.

4.      As explained in the attached Exhibits, the fee issue was never even discussed, much less resolved, *until the parties had fully agreed to all material terms of the class settlement through a court approved mediator.* (Ex. A at p. 2; Ex. B at p. 2)

5.      Given that the preliminary approval order covered fees and expenses, the separate fee and expense requests were deemed moot, and this Court's order so stated. (DE 202)

6.      Prior to the *final* fairness hearing, plaintiffs submitted declarations of the undersigned Lead Counsel and of H. Lee Sarokin, Esquire (co-counsel for plaintiffs) in support of fees and expenses. (DE 219, 221)  Copies of the declarations of record are attached hereto as Exhibits "C" and "D."

7.      The fees and expenses were made a part of the class-wide notice (DE 218, Ex. D to Declaration of Wendy Carlson, general counsel to AMERICAN EQUITY, filed in support of AMERICAN EQUITY's motion for class settlement approval).  A copy of the published notice is attached hereto as Exhibit "E."  No objections whatsoever were filed addressing either fees or costs.  Even the three objectors to the settlement did not object to the award of attorney's fees.

8.      This Court has now certified the settlement class in its entirety and has approved the stipulation of settlement, as amended. (DE 250)  Jurisdiction was reserved, however, on the attorney's fee and expense request. (Id. at p. 30)

9.      Plaintiffs hereby renew their previous request for an award fees and expenses in the total amount of $1,700,000.00.

10.      In support of their request, plaintiffs resubmit the attached motion, amended motion, incorporated memoranda of law and declarations.

11.     In accordance with Local Rule 3.01(g), the undersigned hereby certifies that he has conferred with defendant AMERICAN EQUITY's counsel Charles F. Smith regarding this motion and the relief requested herein. Defendant AMERICAN EQUITY has agreed to pay the award of attorney's fees and expenses sought by this motion as part of the settlement reached by the parties. Accordingly, defendant AMERICAN EQUITY does not oppose this motion.

WHEREFORE plaintiffs CHARLES W. STRUBE, *et al.*, respectfully request the entry of an order awarding them attorney's fees and costs in the amount of $1,700,000 to be paid by defendant AMERICAN EQUITY INVESTMENT LIFE INSURANCE COMPANY.

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a true and correct copy of the foregoing has been mailed to: Robert Vaughn, Esq., BUTLER BURNETT PAPPAS, LLP, 6200 Courtney Campbell Causeway, Suite 1100, Tampa, FL 33607, Charles F. Smith, Esq., SKADDEN, ARPS, SLATE, MEAGHER & FLOM (Illinois), 333 West Wacker Drive, Suite 2100, Chicago, Illinois 60606, Joe R. Whatley, Richard P. Rouco, Whatley Drake, LLC, 2323 Second Avenue North, Birmingham, Alabama 35203, Tom Poulton, Lakeview Office Park, 1035 South Semoran Blvd., Bldg. 2, Suite 1010, Winter Park, FL 32792, William F. McMurry, Ross T. Turner, McMurry & Associates, 4801 Olympia Park Plaza, Ste. 4800, Louisville, Kentucky 40245, Mark K. Gray, Matthew L. White, Gray, Weiss & White, 1200 PNC Plaza, 500 West Jefferson Street, Louisville, KY 40202, Robert O. Kerney, 1420 Lark Drive, Evansville, IN 47715, and William M. Cunningham, Esq., Cunningham Law Firm, Counsel for Maria Burns, 2601 Sarah Lane, Beloit, WI 53511, on this 10<u>th</u> day of February, 2005.

John R. Hargrove
Florida Bar No. 173745
GORDON HARGROVE & JAMES, P.A.
Attorneys for plaintiffs
2400 E. Commercial Blvd., Suite 1100
Fort Lauderdale, Florida 33308
(954) 958-2500
(954) 958-2513 fax

By:   s/John R. Hargrove
          John R. Hargrove

IN THE U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CHARLES W. STRUBE, et al.,

      Plaintiffs,

v.

AMERICAN EQUITY INVESTMENT
LIFE INSURANCE COMPANY, et al.,

      Defendants.

Case No.: 6:01-cv-1236-Orl-19DAB

**CLASS REPRESENTATION**

_____/

## PLAINTIFFS' MOTION FOR A PRELIMINARY AWARD OF ATTORNEY'S FEES WITH INCORPORATED MEMORANDUM OF LAW[*]

Plaintiffs CHARLES W. STRUBE, *et al.*, pursuant to Fed. R. Civ. P. 23(h) and Middle District of Florida Local Rules 3.01 and 4.18, move for a preliminary award of attorney's fees consistent with the parties' Stipulation for Settlement and the Court's April 12, 2004 order regarding the settlement-approval process.  In support thereof, plaintiffs would show (a) that the requested fees are fair and reasonable, (b) that only *after* all substantive terms of the proposed settlement were agreed upon were fees negotiated, (c) and that defendant AMERICAN EQUITY agreed to pay all such fees and reimburse costs up to a total of $1.7 million, subject to the approval of the Court.

---

[*]    This motion is not opposed by defendant AMERICAN EQUITY, which has agreed to pay the requested attorney's fee and expense amount over and above the relief afforded to the Class.  Defendant AMERICAN EQUITY will therefore submit no response.

EXHIBIT

" A "

# MEMORANDUM OF LAW

## I

## INTRODUCTION

### A.   Overview of Requested Fee Award.

Under the terms of the Stipulation of Settlement dated April 8, 2004, plaintiffs have requested preliminary approval of fees and expenses in the amount of $1.7 million.[1]  While defendant AMERICAN EQUITY has agreed to pay this amount, it is important to note that the negotiations between the parties relating to fees and costs were conducted at arm's length *and only after all material terms of the settlement had been agreed upon.*  Since the substantive terms of the settlement were agreed upon in mediation subject to being separately negotiated and approved by the Court, plaintiffs' counsel was actually placed at a "bargaining" disadvantage because a conflict would have arisen by holding up a settlement for a higher fee.  Since this fact gave defendant AMERICAN EQUITY an incentive to bargain vigorously to keep the fees as low as possible, it became imperative for the parties to bargain in good faith.  They did so and eventually arrived at an acceptable figure.  Under these circumstances, the Court should give great weight to the negotiated fee in considering plaintiffs' fee request.  See Elkins v. Equitable Life Insurance Co. of Iowa, 1998 WL 133741, *34 (M.D. Fla. January 27, 1998) (approving class action settlement fee award negotiated only after all material terms of the settlement had been agreed upon).

Prior to the final fairness hearing currently scheduled for August 23, 2004, plaintiffs' counsel will submit any and all declarations required by the Court.  At this preliminary stage,

---

[1]   As of April 19, 2004, the expenses totaled $194,649.07.

however, all counsel of record will be present at the May 19, 2004 hearing and, as officers of the Court, will address the fee issue, the accuracy and fairness of what is being requested, and confirm the fact that no portion of fees or costs will be taken from or reduce the value of the settlement.

**B.**   **Summary of the Litigation and Settlement in the Context of the Fee Request.**

Plaintiffs' counsel undertook to prosecute this class action wholly on a contingent basis. And while plaintiffs' counsel believed in the merits of the claims asserted and were fully prepared to try the case, they nevertheless recognized that the only certain thing about litigation is that outcomes are *never* certain.   Defendant AMERICAN EQUITY, in turn, vigorously opposed plaintiffs' claims throughout the litigation, and the theories asserted presented significant factual and legal hurdles.  Despite obstacles -- and proving that persistence pays -- the parties reached a settlement addressing each and every point raised by the pleadings.

**II**

**DISCUSSION**

Although the fee in Elkins, like the proposed fee in this case, was payable by the defending company, with the amount agreed upon *after* the settlement had been fully structured, the court in Elkins tested the fee on the basis of both the so-called "percentage of recovery" or "common fund" method and the "lodestar" basis.  Under both tests, the fee in Elkins was deemed reasonable.  Because of the similarity between this case and Elkins, the analysis by Judge Kovachevich is instructive.

**A.**   **The "Percentage of Recovery" or "Common Fund" Method.**

In Elkins, *supra*, the court noted that:

3

... The approach to determining an appropriate fee award in the Eleventh Circuit is the percentage of recovery approach. In Camden I Condominium Ass'n v. Dunkle, 946 F.2d 768 (11th Cir. 1991), the Eleventh Circuit observed:

> The majority of common fund fee awards fall between 20% to 30% of the fund. ...[A]n upper limit of 50% of the fund may be stated as a general rule, although even larger percentages have been awarded.

Id. at 774-75  (citations omitted).

1998 WL 133741 at *34.  In Camden I, the court went on to say that there is no "hard and fast rule" as to reasonableness, and that each case must be determined on its own facts.  946 F.2d at 774.  However, the court enumerated the so-called "Johnson factors"[2] as a guidepost for testing what is reasonable and fair.  These include (1) the results obtained, (2) the economics involved and experience of counsel, (3) the attorney's fee for similar cases, (4) the time and labor required and (5) the reaction of the class.  See Elkins, 1998 WL 133741 at *34.

## 1.    The Results Obtained.

Plaintiffs contend that the results obtained by the proposed settlement are exceptional. The parties agreed on a two-tier settlement structure to provide broad-based relief to the Class as a whole while offering Class members the option of seeking individual relief.  Moreover, substantial non-economic relief was obtained which will all but guarantee that the same issues will never arise again as to this defendant.  Indeed, the non-economic aspects of this settlement coupled with the committee monitoring post-approval, both evidence a good-faith willingness on defendant AMERICAN EQUITY's part to make its product and marketing practices an industry example of excellence.  Through plaintiffs' counsel's very thorough investigation, litigation and

---

[2]    See Johnson v. Georgia Highway Exp., Inc., 488 F.2d 714, 717-19 (5th Cir. 1974).

discovery efforts they were able to assess the strengths and weaknesses of their case, and frankly have achieved by settlement nearly all the relief they could have achieved if the case were tried. The settlement also insures that litigation results will not bankrupt defendant AMERICAN EQUITY and will provide *immediate* benefits to the Class.

### 2.      The Economics Involved in Prosecuting a Class Action.

In this case, plaintiffs' counsel prosecuted the action on an "at-risk" contingent fee basis. Thus, counsel would be paid only if they were to achieve a successful result.  Contingent risk obviously is an important factor in determining the fee award, and the recognition of that risk -- and the proper assessment of it -- is necessary to provide incentives to experienced counsel.  In this case, plaintiffs' counsel assumed the risk of a successful result despite the fact that defense counsel -- highly respected in all aspects of complex legal work, including class action insurance litigation -- were paid on a current basis and defended vigorously.  As plaintiff's counsel's time records and expense reports will show, there is no premium payable to them over their hourly rates.  But given the risk involved, a premium would be justified.  As it now stands, no such premium is being requested.

### 3.      The Customary Fee in Similar Cases.

An important factor to consider in arriving at a percentage fee award is the amount of awards in similar cases.  Setting aside the substantial non-economic benefits for the moment, when the requested fee of $1.7 million is viewed in the context of the 2% enhancement, the amount is justifiable on that basis alone.  Over $733 million in premiums are in issue.  The automatic 2% enhancement is nearly $15 million.  Thus, $1.7 million is under 2% of the policy value enhancement economic component.  That figure is far *below* the typical range of common fund fees awarded to counsel in class actions in the Southern and Middle Districts of Florida

where the actual percentage-of-fund approach has been used.[3]

## 4. The Time and Labor Required.

A "time and labor" analysis generally requires consideration of the "lodestar" approach, which is a separate cross-check on fees. Since the point is covered under the Johnson factors, it is mentioned both here and under a separate heading below. This case has been efficiently prosecuted by plaintiffs' counsel, and the total amount of time expended reflects the complexity of the issues. The lodestar in this case as of April 19, 2004 is just in excess of the $1.7 million amount, and expenses are an additional $194,649.07. Since approval of the $1.7 million is sought both for fees *and* expenses, it is reasonable to conclude under a lodestar analysis that the request is fair. See Waters v. International Precious Metals Corp., 190 F.3d 1291, 1294 (11th Cir. 1999) (endorsing use of lodestar analysis for purposes of comparison to the percentage-of-recovery calculation and approving attorney's fees which resulted in "modest" 1.05% multiplier).

---

[3] See, e.g., Lopez v. Checkers Drive-In Restaurants. Inc., 94-282-CIV-T-17C (M.D. Fla. 1996) (awarding 30%); Minnick v. Pages, Inc., 95-277-CIV-T-2lC (M.D. Fla. 1996) (awarding 30%); In Re: Belmac Corp. Sec. Litigation, 92-1814-CIV-T-23-(C) (M.D. Fla. 1994) (awarding 31%); Ressler v. Jacobson, 149 F.R.D. 651 (M.D. Fla. 1992) (awarding 30%); Silver v. Sensormatic, 93-8619-CIV-MARCUS (S.D. Fla. 1996) (awarding 33-1/3%); Kaser v. Swann, 90-607-CIV-ORL-3Al8 (M.D. Fla. 1993) (awarding 30%); Hirschensohn v. Peoples Telephone Company, Inc., 94-0976-CIV-UNGARO-BENAGES (S.D. Fla. 1996) (awarding 27.5%); In Re: Amerifirst Securities Litigation, 89-2614-CIV-HOEVELER (S.D. Fla. 1995) (awarding 27.5%); Ludeman v. C&S/Sovran, 92-8368-CIV-HIGHSMITH (S.D. Fla. 1995) (awarding 27.5%); In Re: Dycom Corp. Securities  Litigation, 9l-8395-CIV-GRAHAM (S.D. Fla. 1994) (awarding 26.5%); Tapken v. Brown, 90-0691-CIV-MARCUS (S.D. Fla. 1995) (awarding 33%); Holloway v. Chapnick, 89-6572-CIV-PAINE (S.D. Fla. 1994) (awarding 30%); In Re: Southeast Banking Corp. Securities Litigation, 90-0760-CIV-MOORE (S.D. Fla. 1994) (awarding 25%); C.V. Reit, Inc. v. H. Irwin Levy, 91-8177-CIV-GONZALEZ (S.D. Fla. 1993) (awarding 27%); In Re: Perfumania, Inc. Securities Litigation, 92-1490-CIV-MARCUS (S.D. Fla. 1993) (awarding 30%); In Re: Royce Laboratories, Inc. Securities Litigation, 92-0923-CIV-MOORE (S.D. Fla. 1993) (awarding 30%); In Re: FPL Group Consolidated Litigation, 90-846l-CIV-NESBITT (S.D. Fla. 1992) (awarding 25%).

**5.      Reaction of the Class.**

Since notice has not yet been given, this component cannot yet be satisfied.   Plaintiffs understand that the relief now sought is only preliminary in nature and that all five Johnson factors must be fully satisfied at the final approval hearing now scheduled for August 23, 2004.

**B.      The "Lodestar" Method.**

As stated above, the Eleventh Circuit has held that in "percentage-of-recovery" cases, a lodestar analysis can and should be used as a cross-check.   See Waters v. International Precious Metals Corp., 190 F.3d 1291, 1294 (11th Cir. 1999) ("while we have decided in this circuit that a lodestar calculation is not proper in common fund cases, we may refer to that figure for comparison"), cert. denied, 530 U.S. 1223 (2000); see also In re Prudential Ins. Co. of America Sales Practices Litigation, 148 F.3d 283, 332 (3rd Cir. 1998) (using lodestar as a "cross-check" of percentage calculation).   The time efficiently invested in prosecuting this case by plaintiffs' counsel was accurately recorded and fairly calculated by capable and experienced lawyers, and those records will be made available to the Court. Given the results achieved in this complex litigation, the lodestar calculation is a reasonable and fair reflection of counsels' efforts, and therefore lends further support for the requested fees and expenses.

<u>CONCLUSION</u>

Plaintiffs respectfully request that the requested fees and expenses be preliminarily approved.

## CERTIFICATION PURSUANT TO LOCAL RULE 3.01(g)

The undersigned hereby certifies that he has conferred with defendant AMERICAN EQUITY's counsel Charles F. Smith regarding this motion and the relief requested herein. Defendant AMERICAN EQUITY has agreed to pay the award of attorney's fees and expenses sought by this motion as part of the settlement reached by the parties. Accordingly, defendant AMERICAN EQUITY does not oppose this motion.

By: _____
John R. Hargrove
Florida Bar No. 173745

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by U.S. mail and facsimile to: Robert Vaughn, Esq., BUTLER BURNETT PAPPAS, LLP, 6200 Courtney Campbell Causeway, Suite 1100, Tampa, FL 33607 33394 and Charles F. Smith, Esq., SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP, 333 West Wacker Drive, Suite 2100, Chicago, Illinois 60606, this 23d day of April, 2004.

John R. Hargrove
Florida Bar No. 173745
GORDON HARGROVE & JAMES, P.A.
500 E. Broward Blvd., Suite 1000
Fort Lauderdale, Florida 33394-3002
(954) 527-2800
(954) 524-9481 fax
Attorneys for plaintiffs

By: _____
John R. Hargrove

G:\LAW\50015\003\Motions\mot for attorney fees 4.doc

8

IN THE U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CHARLES W. STRUBE, et al.,

      Plaintiffs,

v.

AMERICAN EQUITY INVESTMENT
LIFE INSURANCE COMPANY, et al.,

      Defendants.

Case No.: 6:01-cv-1236-Orl-19DAB

**CLASS REPRESENTATION**

_____/

## PLAINTIFFS' AMENDED MOTION FOR A PRELIMINARY AWARD OF ATTORNEY'S FEES WITH INCORPORATED MEMORANDUM OF LAW[*]

Plaintiffs CHARLES W. STRUBE, *et al.*, pursuant to Fed. R. Civ. P. 23(h) and Middle

District of Florida Local Rules 3.01 and 4.18, moved for a preliminary award of attorney's fees

consistent with the parties' Stipulation for Settlement and the Court's April 12, 2004 order

regarding the settlement-approval process, and now move to file an *amended* version thereof[1] to

include minor revisions and a further disclosure as to fees and costs reimbursable to Lead

Counsel subsequent to final approval of the settlement, and specifically relating to Lead

Counsel's post-settlement responsibilities for Class members as part of the Oversight and

Compliance Committee. In support thereof, plaintiffs would readopt those grounds set forth in

their original motion served on April 23, 2004, namely (a) that the requested fees are fair and

---

[*]    This motion is not opposed by defendant AMERICAN EQUITY, which has agreed to pay the requested attorney's fee and expense amount over and above the relief afforded to the Class. Defendant AMERICAN EQUITY will therefore submit no response.

[1]    Filed concurrently herewith is plaintiffs' unopposed motion with incorporated memorandum of law for leave to file an amended version of their motion and memorandum for a preliminary award of attorney's fees.

EXHIBIT
"B"
Bumberg No. 5208

reasonable, (b) that only *after* all substantive terms of the proposed settlement were agreed upon were fees negotiated, (c) and that defendant AMERICAN EQUITY agreed to pay all such fees and reimburse costs up to a total of $1.7 million, subject to the approval of the Court.

## MEMORANDUM OF LAW

### I

### INTRODUCTION

A.    **Overview of Requested Fee Award**.

Under the terms of the Stipulation of Settlement dated April 8, 2004, plaintiffs have requested preliminary approval of fees and expenses in the amount of $1.7 million.[2] While defendant AMERICAN EQUITY has agreed to pay this amount, it is important to note that the negotiations between the parties relating to fees and costs were conducted at arm's length *and only after all material terms of the settlement had been agreed upon*. Since the substantive terms of the settlement were agreed upon in mediation subject to fees and costs being separately negotiated and approved by the Court, plaintiffs' counsel was actually placed at a "bargaining" disadvantage because a conflict would have arisen by holding up a settlement for a higher fee. Since this fact gave defendant AMERICAN EQUITY an incentive to bargain vigorously to keep

---

[2]    As of April 19, 2004, the expenses totaled $194,649.07. In addition to the fee payable for Lead Counsel's work through and including the date of final approval of the proposed settlement, defendant AMERICAN EQUITY has agreed to be responsible for reimbursement of fees and costs incurred by Lead Counsel on behalf of all Class members *after* final approval in connection with his duties and responsibilities relating to the Oversight and Compliance Committee. The Committee will function for three years. (See Stipulation of Settlement filed April 8, 2004, Section X at 24-25.) By agreement between the parties, fees and costs for which defendant AMERICAN EQUITY will be responsible to reimburse may not exceed $200,000 per year for the three year period.

the fees as low as possible, it became imperative for the parties to bargain in good faith. They did so and eventually arrived at an acceptable figure. Under these circumstances, the Court should give great weight to the negotiated fee in considering plaintiffs' fee request. See Elkins v. Equitable Life Insurance Co. of Iowa, 1998 WL 133741, *34 (M.D. Fla. January 27, 1998) (approving class action settlement fee award negotiated only after all material terms of the settlement had been agreed upon).

Prior to the final fairness hearing currently scheduled for August 23, 2004, plaintiffs' counsel will submit any and all declarations required by the Court. At this preliminary stage, however, all counsel of record will be present at the May 19, 2004 hearing and, as officers of the Court, will address the fee issue, the accuracy and fairness of what is being requested, and confirm the fact that no portion of fees or costs will be taken from or reduce the value of the settlement.

**B.    Summary of the Litigation and Settlement in the Context of the Fee Request.**

Plaintiffs' counsel undertook to prosecute this class action wholly on a contingent basis. And while plaintiffs' counsel believed in the merits of the claims asserted and were fully prepared to try the case, they nevertheless recognized that the only certain thing about litigation is that outcomes are *never* certain. Defendant AMERICAN EQUITY, in turn, vigorously opposed plaintiffs' claims throughout the litigation, and the theories asserted presented significant factual and legal hurdles. Despite obstacles -- and proving that persistence pays -- the parties reached a settlement addressing each and every point raised by the pleadings.

## II

## DISCUSSION

Although the fee in <u>Elkins</u>, like the proposed fee in this case, was payable by the defending company, with the amount agreed upon *after* the settlement had been fully structured, the court in <u>Elkins</u> tested the fee on the basis of both the so-called "percentage of recovery" or "common fund" method and the "lodestar" basis. Under both tests, the fee in <u>Elkins</u> was deemed reasonable. Because of the similarity between this case and <u>Elkins</u>, the analysis by Judge Kovachevich is instructive.

**A.      The "Percentage of Recovery" or "Common Fund" Method.**

In <u>Elkins</u>, *supra*, the court noted that:

> ... The approach to determining an appropriate fee award in the Eleventh Circuit is the percentage of recovery approach.   In <u>Camden I Condominium Ass'n v. Dunkle</u>, 946 F.2d 768 (11th Cir. 1991), the Eleventh Circuit observed:
>
>> The majority of common fund fee awards fall between 20% to 30% of the fund. ...[A]n upper limit of 50% of the fund may be stated as a general rule, although even larger percentages have been awarded.
>
> <u>Id.</u> at 774-75  (citations omitted).

1998 WL 133741 at *34.  In <u>Camden I</u>, the court went on to say that there is no "hard and fast rule" as to reasonableness, and that each case must be determined on its own facts.  946 F.2d at 774. However, the court enumerated the so-called "<u>Johnson</u> factors"[3] as a guidepost for testing what is reasonable and fair.  These include (1) the results obtained, (2) the economics involved

---

[3]      See <u>Johnson v. Georgia Highway Exp., Inc.</u>, 488 F.2d 714, 717-19 (5th Cir. 1974).

and experience of counsel, (3) the attorney's fee for similar cases, (4) the time and labor required and (5) the reaction of the class.  See Elkins, 1998 WL 133741 at *34.

### 1.      The Results Obtained.

Plaintiffs contend that the results obtained by the proposed settlement are exceptional. The parties agreed on a two-tier settlement structure to provide broad-based relief to the Class as a whole while offering Class members the option of seeking individual relief.   Moreover, substantial non-economic relief was obtained which will all but guarantee that the same issues will never arise again as to this defendant.  Indeed, the non-economic aspects of this settlement coupled with the committee monitoring post-approval, both evidence a good-faith willingness on defendant AMERICAN EQUITY's part to make its product and marketing practices an industry example of excellence.  Through plaintiffs' counsel's very thorough investigation, litigation and discovery efforts they were able to assess the strengths and weaknesses of their case, and frankly have achieved by settlement nearly all the relief they could have achieved if the case were tried. The settlement also insures that litigation results will not bankrupt defendant AMERICAN EQUITY and will provide *immediate* benefits to the Class.

### 2.      The Economics Involved in Prosecuting a Class Action.

In this case, plaintiffs' counsel prosecuted the action on an "at-risk" contingent fee basis. Thus, counsel would be paid only if they were to achieve a successful result.  Contingent risk obviously is an important factor in determining the fee award, and the recognition of that risk -- and the proper assessment of it -- is necessary to provide incentives to experienced counsel.  In this case, plaintiffs' counsel assumed the risk of a successful result despite the fact that defense counsel -- highly respected in all aspects of complex legal work, including class action insurance litigation -- were paid on a current basis and defended vigorously.  As plaintiffs' counsel's time

records and expense reports will show, there is no premium payable to them over their hourly rates. But given the risk involved, a premium would be justified. As it now stands, no such premium is being requested.

### 3.   The Customary Fee in Similar Cases.

An important factor to consider in arriving at a percentage fee award is the amount of awards in similar cases. Setting aside the substantial non-economic benefits for the moment, when the requested fee of $1.7 million is viewed in the context of the 2% policy value enhancement, the amount is justifiable on that basis alone. Over $733 million in premiums are in issue. The automatic 2% enhancement is nearly $15 million. Thus, $1.7 million is less than 12% of the policy value enhancement economic component. That figure is far *below* the typical range of common fund fees awarded to counsel in class actions in the Southern and Middle Districts of Florida where the actual percentage-of-fund approach has been used.[4]

---

[4]       See, e.g., Lopez v. Checkers Drive-In Restaurants, Inc., 94-282-CIV-T-17C (M.D. Fla. 1996) (awarding 30%); Minnick v. Pages, Inc., 95-277-CIV-T-21C (M.D. Fla. 1996) (awarding 30%); In Re: Belmac Corp. Sec. Litigation, 92-1814-CIV-T-23-(C) (M.D. Fla. 1994) (awarding 31%); Ressler v. Jacobson, 149 F.R.D. 651 (M.D. Fla. 1992) (awarding 30%); Silver v. Sensormatic, 93-8619-CIV-MARCUS (S.D. Fla. 1996) (awarding 33-1/3%); Kaser v. Swann, 90-607-CIV-ORL-3Al8 (M.D. Fla. 1993) (awarding 30%); Hirschensohn v. Peoples Telephone Company, Inc., 94-0976-CIV-UNGARO-BENAGES (S.D. Fla. 1996) (awarding 27.5%); In Re: Amerifirst Securities Litigation, 89-2614-CIV-HOEVELER (S.D. Fla. 1995) (awarding 27.5%); Ludeman v. C&S/Sovran, 92-8368-CIV-HIGHSMITH (S.D. Fla. 1995) (awarding 27.5%); In Re: Dycom Corp. Securities Litigation, 91-8395-CIV-GRAHAM (S.D. Fla. 1994) (awarding 26.5%); Tapken v. Brown, 90-0691-CIV-MARCUS (S.D. Fla. 1995) (awarding 33%); Holloway v. Chapnick, 89-6572-CIV-PAINE (S.D. Fla. 1994) (awarding 30%); In Re: Southeast Banking Corp. Securities Litigation, 90-0760-CIV-MOORE (S.D. Fla. 1994) (awarding 25%); C.V. Reit, Inc. v. H. Irwin Levy, 91-8177-CIV-GONZALEZ (S.D. Fla. 1993) (awarding 27%); In Re: Perfumania, Inc. Securities Litigation, 92-1490-CIV-MARCUS (S.D. Fla. 1993) (awarding 30%); In Re: Royce Laboratories, Inc. Securities Litigation, 92-0923-CIV-MOORE (S.D. Fla. 1993) (awarding 30%); In Re: FPL Group Consolidated Litigation, 90-8461-CIV-NESBITT (S.D. Fla. 1992) (awarding 25%).

4. **The Time and Labor Required.**

A "time and labor" analysis generally requires consideration of the "lodestar" approach, which is a separate cross-check on fees. Since the point is covered under the Johnson factors, it is mentioned both here and under a separate heading below. This case has been efficiently prosecuted by plaintiffs' counsel, and the total amount of time expended reflects the complexity of the issues. The lodestar in this case as of April 19, 2004 is just in excess of the requested $1.7 million amount, and expenses are an additional $194,649.07. Since approval of the $1.7 million is sought both for fees *and* expenses, it is reasonable to conclude under a lodestar analysis that the request is fair. See Waters v. International Precious Metals Corp., 190 F.3d 1291, 1294 (11th Cir. 1999) (endorsing use of lodestar analysis for purposes of comparison to the percentage-of-recovery calculation and approving attorney's fees which resulted in "modest" 1.05% multiplier).

5. **Reaction of the Class.**

Since notice has not yet been given, this component cannot yet be satisfied. Plaintiffs understand that the relief now sought is only preliminary in nature and that all five Johnson factors must be fully satisfied at the final approval hearing now scheduled for August 23, 2004.

B. **The "Lodestar" Method.**

As stated above, the Eleventh Circuit has held that in "percentage-of-recovery" cases, a lodestar analysis can and should be used as a cross-check. See Waters v. International Precious Metals Corp., 190 F.3d 1291, 1294 (11th Cir. 1999) ("while we have decided in this circuit that a lodestar calculation is not proper in common fund cases, we may refer to that figure for comparison"), cert. denied, 530 U.S. 1223 (2000); see also In re Prudential Ins. Co. of America Sales Practices Litigation, 148 F.3d 283, 332 (3rd Cir. 1998) (using lodestar as a "cross-check" of

percentage calculation). The time efficiently invested in prosecuting this case by plaintiffs' counsel was accurately recorded and fairly calculated by capable and experienced lawyers, and those records will be made available to the Court. Given the results achieved in this complex litigation, the lodestar calculation is a reasonable and fair reflection of plaintiffs' counsel's efforts, and therefore lends further support for the requested fees and expenses.

## CONCLUSION

Plaintiffs respectfully request that the requested fees and expenses be preliminarily approved.

## CERTIFICATION PURSUANT TO LOCAL RULE 3.01(g)

The undersigned hereby certifies that he has conferred with defendant AMERICAN EQUITY's counsel Charles F. Smith regarding this motion and the relief requested herein. Defendant AMERICAN EQUITY has agreed to pay the award of attorney's fees and expenses sought by this motion as part of the settlement reached by the parties. Accordingly, defendant AMERICAN EQUITY does not oppose this motion.

By: _____
John R. Hargrove
Florida Bar No. 173745

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by U.S. mail and facsimile to: Robert Vaughn, Esq., BUTLER BURNETT PAPPAS, LLP, 6200 Courtney Campbell Causeway, Suite 1100, Tampa, FL 33607 33394 and Charles F. Smith, Esq., SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP, 333 West Wacker Drive, Suite 2100, Chicago, Illinois 60606, this _____ day of April, 2004.

> John R. Hargrove
> Florida Bar No. 173745
> GORDON HARGROVE & JAMES, P.A.
> 500 E. Broward Blvd., Suite 1000
> Fort Lauderdale, Florida 33394-3002
> (954) 527-2800
> (954) 524-9481 fax
> Attorneys for plaintiffs
>
> By: _____
> John R. Hargrove

G:\LAW\50015\003\Motions\mot for attorney fees 6.doc

IN THE U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CHARLES W. STRUBE, et al.,

       Plaintiffs,

v.

AMERICAN EQUITY INVESTMENT
LIFE INSURANCE COMPANY, et al.
Corporation,

       Defendants.

_____/

Case No.:  6:01-cv-1236-Orl-19DAB

**CLASS REPRESENTATION**

## PLAINTIFFS' NOTICE OF FILING DECLARATION OF JOHN R. HARGROVE IN SUPPORT OF FINAL CLASS CERTIFICATION, SETTLEMENT APPROVAL AND PLAINTIFFS' APPLICATION FOR AWARD OF ATTORNEY'S FEES AND REIMBRSEMENT OF EXPENSES

Plaintiffs hereby gives notice of filing the declaration of John R. Hargrove dated August 16, 2004, in support of final class certification, settlement approval and plaintiffs' application for award of attorney's fees and reimbursement of expenses.



EXHIBIT
"C"

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a true and correct copy of the foregoing has been mailed to: Robert Vaughn, Esq., BUTLER BURNETT PAPPAS, LLP, 6200 Courtney Campbell Causeway, Suite 1100, Tampa, FL 33607, Charles F. Smith, Esq., SKADDEN, ARPS, SLATE, MEAGHER & FLOM (Illinois), 333 West Wacker Drive, Suite 2100, Chicago, Illinois 60606, Joe R. Whatley, Richard P. Rouco, Whatley Drake, LLC, 2323 Second Avenue North, Birmingham, Alabama 35203, Tom Poulton, Lakeview Office Park, 1035 South Semoran Blvd., Bldg. 2, Suite 1010, Winter Park, FL 32792, William F. McMurry, Ross T. Turner, McMurry & Associates, 4801 Olympia Park Plaza, Ste. 4800, Louisville, Kentucky 40245, Mark K. Gray, Matthew L. White, Gray, Weiss & White, 1200 PNC Plaza, 500 West Jefferson Street, Louisville, KY 40202, Robert O. Kerney, 1420 Lark Drive, Evansville, IN 47715, and William M. Cunningham, Esq., Cunningham Law Firm, Counsel for Maria Burns, 2601 Sarah Lane, Beloit, WI 53511, on this 16th day of August, 2004.

John R. Hargrove, Esq.
Florida Bar No. 173745
GORDON HARGROVE & JAMES, P.A.
500 E. Broward Blvd, Suite 1000
Ft. Lauderdale, FL 33394
Telephone:   (954) 527-2800
Facsimile:   (954) 524-9481
Attorneys for plaintiffs


By:   s/John R. Hargrove
       John R. Hargrove

IN THE U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CHARLES W. STRUBE, et al.,

      Plaintiffs,

v.

AMERICAN EQUITY INVESTMENT
LIFE INSURANCE COMPANY, et al.,

      Defendants.

_____/

Case No.:  6:01-cv-1236-Orl-19DAB

**CLASS REPRESENTATION**

## DECLARATION OF JOHN R. HARGROVE IN SUPPORT OF FINAL CLASS CERTIFICATION, SETTLEMENT APPROVAL AND PLAINTIFFS' APPLICATION FOR AWARD OF ATTORNEY'S FEES AND REIMBURSEMENT OF EXPENSES

Pursuant to 28 U.S.C. § 1746, JOHN R. HARGROVE hereby makes the following declaration under penalty of perjury in support of final class certification and settlement approval and plaintiffs' application for an award of attorney's fees and reimbursement of expenses.

## INTRODUCTION

1.     My name is John R. Hargrove.  I am a member of the law firm of Gordon Hargrove & James, P.A., Lead Counsel for plaintiffs in this action.  I am submitting this declaration in support of final class certification and settlement approval in this case, as well plaintiffs' application for an award of attorney's fees and reimbursement of expenses incurred in the course of this litigation.  The identification and background of my firm and the individual attorneys who rendered services in this action is attached hereto as Exhibit "A."

## FINAL CLASS CERTIFICATION AND SETTLEMENT APPROVAL

2.     The focus of this litigation is defendant AMERICAN EQUITY's creation, marketing and sales of a particular type of deferred fixed annuity called an "equity indexed annuity." Plaintiffs' essential claim is that Class Members -- consisting of senior citizens -- were deceived into purchasing these inappropriate financial products. Plaintiffs allege that defendant AMERICAN EQUITY's agents are attracted to this type of product because it pays high "up front" commissions as compared to other insurance and annuity products; that defendant AMERICAN EQUITY has failed to train its agents; that it carefully tailors promotional materials which deceptively tout advantages of the product while disclosing none of the alleged disadvantages; that the agents do not understand what they are selling; that the customers do not understand what they are buying; that the target market is the vulnerable "senior citizen" demographic; and that the agents are mere instrumentalities of a uniform deception.

3.     The crux of the alleged harm suffered by the Class Members is that these individuals purchased defendant AMERICAN EQUITY's equity indexed annuities believing that they would have immediate, easy, and unencumbered access to their retirement savings, including the receipt of monthly income. The settlement reached in this case and preliminarily approved by the Court directly addresses and resolves these alleged injuries by providing Class Members the option to annuitize their policies at any time during the contract term, thereby receiving a monthly income stream. Significantly, under the terms of the settlement Class Members may annuitize without the imposition of substantial penalties and surrender charges that would otherwise apply -- and which can be as high as 20% of the current contract value. Moreover, Class Members electing the annuitization benefit will receive a 2% policy value enhancement at the time of the annuitization.

2

4.      For Class Members who believe that the annuitization benefit and accompanying policy value enhancement do not adequately address the actual harm he or she has suffered, the settlement provides for Individual Claim Review Relief.  There is no limit to the types of relief that can be awarded to Class Members through this process, nor is there a cap on the aggregate value of the relief.

5.      In addition to the economic terms, the settlement also contains substantial non-economic provisions which directly address the plaintiffs' allegations relating to the manner in which defendant AMERICAN EQUITY markets and sells its equity indexed annuities.  The non-economic relief provided by the settlement includes guidelines which are subject to review and monitoring by an Oversight and Compliance Committee.  They include training of agents, point of sale monitoring, post-sale monitoring, issuance of informative and accurate marketing materials, adoption and effectuation of a protocol to determine all changes to laws and regulations, and maintenance of membership in and accreditation by the Insurance Marketplace Standards Association ("IMSA").  (It is worth noting that during the course of this litigation defendant AMERICAN EQUITY actually lost and regained its IMSA membership and accreditation.)

6.      The settlement effectively addresses and resolves all of the wrongs alleged by the plaintiffs by affording economic relief to elderly Class Members now -- rather than waiting for the conclusion of years of uncertain litigation.  The matter was settled after three years of vigorous litigation in which the parties were able to assess fully the strengths and weaknesses of their respective positions.  And it provides substantial non-economic benefits to Class Members and the public-at-large.   In my experienced, professional judgment, the settlement is fair, reasonable and adequate.  (There were a total of three (3) objections to the settlement received

prior to the July 24, 2004 deadline.  Each of these objections has been substantively addressed in a memorandum of law submitted to the Court.)

## ATTORNEYS' FEES AND EXPENSES

7.     The total number of hours spent to date on this litigation by my firm is 6,692.3. The total lodestar amount for attorney and paralegal time based on the firm's current rates is $1,788,750.00.

8.     The following chart is a summary indicating the amount of time spent to date by attorneys, paralegals and law clerks of this firm on this litigation at current rates.  The chart was prepared from a full and complete statement of services rendered.

| ATTORNEY | HOURS | RATE | LODESTAR |
|---|---|---|---|
| John R. Hargrove | 1,032.2 | 350 | $361,270.00 |
| W. Kent Brown | 1,080.9 | 350 | $378,315.00 |
| Cristina M. Pierson | 749.0 | 350 | $261,555.00 |
| Bruce A. Weihe | 74.6 | 350 | $26,110.00 |
| William H. Davis | 306.0 | 250 | $76,500.00 |
| Dana J. McElroy | 14.6 | 350 | $5,110.00 |
| Carol A. Gart | 1,119.0 | 250 | $279,750.00 |
| Adam S. Chotiner | 471.2 | 250 | $117,800.00 |
| Lynn D. Carrillo | 230.0 | 250 | $57,500.00 |
| Robert C. Weill | 362.4 | 250 | $90,600.00 |
| Margaret E. Kozan | 36.7 | 250 | $9,175.00 |
| Sarah C. Crass | 23.3 | 250 | $5,825.00 |
| **Total Attorneys** | 5,499.9 | | $1,669,510.00 |
| **PARALEGAL/ LAW CLERK** | | | |
| Chere D. Evans | 1,058.1 | 100 | $105,810.00 |
| Barbara J. Kotick | 23.0 | 100 | $2,300.00 |

| Garrett R. Franzen | 14.4 | 100 | $1,440.00 |
|---|---|---|---|
| Kerri E. Utter | 22.3 | 100 | $2,230.00 |
| Lisa I. Ura | 19.7 | 100 | $1,970.00 |
| Tammy R. Westphal-Klein | 44.9 | 100 | $4,490.00 |
| Veresa L. Jones Adams | 10.0 | 100 | $1,000.00 |
| **Total Paralegals/** **Law Clerks** | 1,192.4 | | $119,240.00 |
| **GRAND TOTALS** | 6,692.3 | | $1,788,750.00 |

9.    The following chart summarizes the unreimbursed expenses incurred to date by my firm in this litigation, which total $188,633.44.   A full and complete listing of the unreimbursed expenses is included in the statement of services rendered.

| **EXPENSE CATEGORY** | **TOTAL AMOUNT** |
|---|---|
| Meals, Hotel, Transportation and Parking | $ 56,597.10 |
| Photocopies | $ 43,464.42 |
| Postage | $     559.45 |
| Telephone and Facsimile | $  3,671.60 |
| Messenger, Courier, Fed Ex | $  5,477.37 |
| Court Reporter Charges | $  5,660.63 |
| Electronic Research (Westlaw/Lexis) | $ 27,015.18 |
| Experts/Consultants | $ 41,318.99 |
| Filing Fees | $     255.25 |
| Process Server Charges | $     250.00 |
| Witness Fees | $       90.00 |
| Document Retrieval/Processing | $  4,273.45 |
| **GRAND TOTAL** | $188,633.44 |

10.     The listing of expenses as reflected in the statement of services rendered was prepared from expense vouchers and check records kept and maintained in the ordinary course of business.

11.     I have been a member of the Florida Bar in good standing since 1974.  In my reasoned, professional judgment, the fees and expenses incurred by my firm in this litigation were reasonable and necessary to the prosecution and resolution of this complex matter.


I declare under penalty of perjury that the foregoing is true and correct.  Executed this 16th day of August, 2004.


_____
JOHN R. HARGROVE


G:\LAW\50015\003\Declarations\JRH declaration 2.doc

6

## BACKGROUND OF GORDON HARGROVE & JAMES, P.A.
## AND ITS ATTORNEYS WHO RENDERED SERVICES IN *STRUBE V.*
## *AMERICAN EQUITY*, CASE NO. 6:01-CV-1236-Orl-19DAB

Gordon Hargrove & James, P.A. is a leading Florida law firm, specializing in a variety of civil practice areas, with offices in Fort Lauderdale and Orlando. The firm serves clients throughout the State of Florida and the United States. The firm's clients include national and international Fortune 500 companies, individuals, charities, and pro bono assignments. Gordon Hargrove & James, P.A. provides a wide range of professional legal services in a variety of areas, including:

- Administrative agency proceedings
- Appeals
- Business torts
- Creditors' rights
- Employment law
- Fiduciary litigation
- General civil litigation
- Class action litigation
- Insurance litigation
- Intellectual property
- Land use and zoning proceedings
- Maritime law
- Media and telecommunications law
- Medical malpractice litigation
- Products liability

## INDIVIDUAL ATTORNEYS

## JOHN H. HARGROVE (Shareholder)

**Education:**

- J.D., Indiana University, 1972
- B.S., Butler University, 1969

**Academic Profile:**

- J.D. magna cum laude
- Recipient, "Most Outstanding Student in Graduating Class," Indiana University Law School Faculty Award
- Indiana Law Review, Lead Articles and Book Review Editor
- Law clerk Honorable Roy L. Stephenson, Circuit Judge, United States Court of Appeals, Eighth Circuit, 1972-1974

## EXHIBIT "A"

**Professional Credentials:**

- o Board certified appellate practice
- o "Best Lawyers in America", business and fiduciary litigation
- o Florida Trends Magazine's "Elite Lawyers"
- o President, Broward County Chapter, Federal Bar Association 1981-82
- o Fellow, Florida Academy of Probate and Trust Litigation

**Current Community Service:**

- o Butler University Board of Trustees
- o Indiana University School of Law Board of Visitors
- o United Way of Broward County, Florida, Board of Directors

**Personal History:**

- o Born, January 20, 1947, Chicago, Illinois


**W. KENT BROWN**  (Shareholder)

**Education:**

- o Juris Doctor (with honors), Florida State University, 1990
- o Bachelor of Science in computer science and in mathematics, Duke University, 1985

**Academic Honors:**

- o Book Award in legal research and writing
- o Staff, Journal of Land Use and Environmental Law

**Professional Credentials:**

- o Admitted to the Florida Bar, 1990

**Professional Experience:**

- o Law clerk for Judge Martha Warner, Fourth District Court of Appeal

**Business Experience:**

- o Vice-president, Real Estate Development Corporation

**Personal History:**

- o   Born, April 18, 1963, Fort Lauderdale, Florida

## CRISTINA M. PIERSON  (Shareholder)

**Education:**

- o   Juris Doctor, Nova Southeastern University (magna cum laude), 1993
- o   Bachelor of Arts in criminal justice, University of Florida, 1987

**Academic Honors:**

- o   Moot Court
- o   Law Review

**Special Competencies:**

- o   Fluent in Spanish

**Professional Credentials:**

- o   Member, Florida Bar
- o   Member, Federal Bar Association
- o   Member, Broward County Bar Association
- o   Admitted to practice before the U.S. District Court for the Northern, Middle, and Southern Districts of Florida
- o   Admitted to practice before the U.S. District Court of Appeals for the Eleventh Circuit

**Professional Experience:**

- o   Practices in the areas of commercial, construction, business tort litigation, and media law

**Personal History:**

- o   Born, March 1, 1966, Gainesville, Florida

**BRUCE A. WEIHE** (Shareholder)

**Education:**

- o  Juris Doctor, University of Florida Law School, 1971
- o  Bachelor of Arts, Davidson College, 1968

**Academic Honors:**

- o  Executive Editor, University of Florida Law Review

**Professional Credentials:**

- o  Admitted to The Florida Bar, 1971
- o  Member, Trial Bar, U.S. District Court for the Southern District of Florida
- o  Honors Attorney, Federal Deposit Insurance Corporation, Washington, D.C. office, two years
- o  Admitted to the Bankruptcy Bar for the Bankruptcy Court of the Southern District of Florida
- o  Director, Broward County Bar Association
- o  Past chairman, Broward County Bar Association, Corporate, Business, and Banking Law section
- o  Member, Florida Bar Professional Ethics Committee, June 2001-present

**Professional Experience:**

- o  Represents clients in documentation, as well as enforcement of, corporate agreements, partnership agreements, and secured transactions under the Uniform Commercial Code
- o  Retained by financial institutions and corporate clients as special counsel for documentation, litigation, and regulatory matters
- o  Lectured on lender liability, creditors' rights, and UCC matters
- o  Corporate Secretary and Legal Counsel, Barnett Bank of South Florida, 1981 to 1986

**Community Service:**

- o  Chairman, Planning & Zoning Board, City of Fort Lauderdale
- o  Chairman, Community Services Board, City of Fort Lauderdale
- o  President, Board of Trustees, First Presbyterian Church of Fort Lauderdale

**Personal History:**

- o  Born, January 25, 1946, Oak Park, Illinois

**WILLIAM H. DAVIS**  (Formerly of counsel)

**Education:**

- o   Juris Doctor, University of Florida Law School, 1964
- o   Undergraduate degree, Florida State University, 1962

**Professional Credentials:**

- o   Admitted to The Florida Bar, 1965
- o   "AV" rated by Martindale-Hubbell
- o   Orange County Bar Association
- o   United States District Court for the Southern District of Florida
- o   United States District Court for the Middle District of Florida
- o   United States Court of Appeals for the Eleventh Circuit
- o   Three years on the executive counsel of the Orange County Bar Association
- o   Three years as a member of the Board of Trustees of the Orange County Legal Aid Association.

**Professional Experience:**

- o   Personal injuries
- o   Wrongful death
- o   Business litigation
- o   Insurance litigation
- o   Will contests and probate litigation
- o   Professional liability.

**Personal History:**

- o   Born, November 15, 1939, Chattanooga, Tennessee

**DANA J. McELROY**  (Shareholder)

**Education:**

- o   Juris Doctor, University of Florida, 1989
- o   Bachelor of Arts, University of Florida, 1984

**Professional Credentials:**

- o   Admitted to the Florida Bar, 1990
- o   Admitted to practice before the U.S. District Court, Southern and Northern Districts of Florida
- o   Martindale-Hubbell "AV" rating

**Professional Experience:**

- o   Practices medial law and commercial litigation

**Personal History:**

- o   Born, April 5, 1962, Winter Park, Florida

## CAROL A. GART  (Associate)

**Education:**

- o   Juris Doctor, Emory University School of Law, 1977
- o   Visiting student, National Law Center, George Washington University
- o   Bachelor of Arts (cum laude), in political science, 1974

**Professional Credentials:**

- o   Member, Florida Bar
- o   Inactive member, Pennsylvania Bar
- o   Admitted to practice before the United States Court of Appeals for the Fifth and Eleventh Districts
- o   Admitted to practice before the United States District Courts for the Southern, Middle, and Northern Districts of Florida

**Professional Experience:**

- o   Law clerk to the Hon. Barry J. Stone, Fourth District Court of Appeal, August 1998 to August 2001
- o   Chief legal counsel, Broward County District, Florida Department of Children and Family Services, June 1995 to July 1998
- o   Assistant state attorney, Broward County, Florida, September 1980 to April 1984

**Personal History:**

- o   Born, November 15, 1953, Philadelphia, Pennsylvania

## ADAM S. CHOTINER  (Associate)

**Education:**

- o   Juris Doctor (cum laude), University of Miami, 1998
- o   Bachelor of Arts in political science, University of Florida, 1993

**Professional Credentials:**

- o   Admitted to the Florida Bar, 1998
- o   Member, Florida Bar, Labor and Employment Law Section
- o   Member, American Bar Association, Labor and Employment Law Section
- o   Member, Federal Bar Association, Labor and Employment Law Section
- o   Chairperson, Labor and Employment Law Section, Broward County Bar Association, 2002-2003
- o   Article published by the Florida Bar Journal
- o   Lecturer at labor and employment law seminars

**Professional Experience:**

- o   Represents corporations and individuals in labor and employment law and commercial law matters
- o   Legal intern to the Honorable Bennett Brummer, Public Defender for the Eleventh Judicial Circuit of Florida
- o   Legal intern to the Honorable Stephen T. Brown, United States Magistrate Judge

**Personal History:**

- o   Born, February 14, 1971, South Miami, Florida

## LYNN D. CARRILLO  (Former associate)

**Education:**

- o   Juris Doctor, cum laude, University of Miami, 1997
- o   Bachelor of Arts, with honors, in Journalism and Political Science, University of Miami, 2000

**Professional Credentials:**

- o   Admitted to the Florida Bar, 2000
- o   Member of the Federal Bar Association
- o   Member of the Broward County Bar Association
- o   Member of the Cuban American Bar Association

**Personal History:**

- o   Born, December 13, 1975, Miami, Florida

**ROBERT C. WEILL**  (Former associate)

**Education:**

- o  Bachelor of Arts, Cornell University, 1990
- o  Juris Doctor, Nova Southeastern University's Shepard Broad Law Center, 1994

**Professional Credentials:**

- o  Admitted to the Florida Bar, 1994
- o  Member of the Tort and Insurance Practice Section (TIPS) of the American Bar Association
- o  Member of the Defense Research Institute (DRI)
- o  Member of the Florida Supreme Court Historical Society\
- o  Member of the Florida Defense Lawyer's Association.
- o  Editorial board member of the Trial Advocate Quarterly.
- o  Has authored numerous articles on extra-contractual issues.

**Professional Experience:**

- o  Appellate, extra-contractual, liability and coverage matters.

**Personal History:**

- o  Born September 12, 1968

**MARGARET E. KOZAN**  (Former associate)

**Education:**

- o  Bachelor of Arts, journalism and history, Louisiana State University, 1991
- o  Juris Doctor, Louisiana State University, 1995

**Academic Honors:**

- o  Senior Editor of the Louisiana Law Review
- o  Admitted to the Order of the Coif

**Professional Credentials:**

- o  Admitted to Florida Bar, 1999
- o  Admitted to Louisiana Bar, 1995

**Professional Experience:**

- Law clerk to United States District Judge Frank Polozola in the Middle District of Louisiana.
- Practices in the areas of commercial, construction, business tort litigation, and media law

**Personal History:**

- Born, April 9, 1969, Baton Rouge, Louisiana

## SARAH C. CRASS   (Former associate)

**Education:**

- Bachelor of Arts in political science, with honors, University of Florida, 1995
- Juris Doctor, Boston University School of Law, 1998

**Professional Credentials:**

- Admitted to Florida Bar, 1999
- Admitted to New Jersey Bar, 1999
- Admitted to New York Bar, 2002
- Admitted to practice in the United States District Court for the Southern District of Florida, the Middle District of Florida and the District of New Jersey
- Member, American Bar Association
- Member, Broward County Bar Association

**Personal History:**

- Born, July 17, 1973, Westwood, New Jersey

G:\LAW\50015\003\Misc\Attorneys Bio.doc

IN THE U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CHARLES W. STRUBE, et al.,

    Plaintiffs,

v.

AMERICAN EQUITY INVESTMENT
LIFE INSURANCE COMPANY, et al.
Corporation,

    Defendants.

_____/

Case No.:  6:01-cv-1236-Orl-19DAB

**CLASS REPRESENTATION**

### PLAINTIFFS' NOTICE OF FILING DECLARATION OF H. LEE SAROKIN IN SUPPORT OF FINAL CLASS CERTIFICATION, SETTLEMENT APPROVAL AND PLAINTIFFS' APPLICATION FOR AWARD OF ATTORNEY'S FEES AND REIMBRSEMENT OF EXPENSES

Plaintiffs hereby gives notice of filing the declaration of H. Lee Sarokin dated August 16, 2004, in support of final class certification, settlement approval and plaintiffs' application for award of attorney's fees and reimbursement of expenses.



## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a true and correct copy of the foregoing has been mailed to: Robert Vaughn, Esq., BUTLER BURNETT PAPPAS, LLP, 6200 Courtney Campbell Causeway, Suite 1100, Tampa, FL 33607, Charles F. Smith, Esq., SKADDEN, ARPS, SLATE, MEAGHER & FLOM (Illinois), 333 West Wacker Drive, Suite 2100, Chicago, Illinois 60606, Joe R. Whatley, Richard P. Rouco, Whatley Drake, LLC, 2323 Second Avenue North, Birmingham, Alabama 35203, Tom Poulton, Lakeview Office Park, 1035 South Semoran Blvd., Bldg. 2, Suite 1010, Winter Park, FL 32792, William F. McMurry, Ross T. Turner, McMurry & Associates, 4801 Olympia Park Plaza, Ste. 4800, Louisville, Kentucky 40245, Mark K. Gray, Matthew L. White, Gray, Weiss & White, 1200 PNC Plaza, 500 West Jefferson Street, Louisville, KY 40202, Robert O. Kerney, 1420 Lark Drive, Evansville, IN 47715, and William M. Cunningham, Esq., Cunningham Law Firm, Counsel for Maria Burns, 2601 Sarah Lane, Beloit, WI 53511, on this 16<u>th</u> day of August, 2004.

> John R. Hargrove, Esq.
> Florida Bar No. 173745
> GORDON HARGROVE & JAMES, P.A.
> 500 E. Broward Blvd, Suite 1000
> Ft. Lauderdale, FL 33394
> Telephone:     (954) 527-2800
> Facsimile:     (954) 524-9481
> Attorneys for plaintiffs
>
>
> By:     s/John R. Hargrove
>          John R. Hargrove

IN THE U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CHARLES W. STRUBE, et al.,

        Plaintiffs,

v.

AMERICAN EQUITY INVESTMENT
LIFE INSURANCE COMPANY, et al.,

        Defendants.

_____/

Case No.: 6:01-cv-1236-Orl-19DAB

**CLASS REPRESENTATION**

## DECLARATION OF H. LEE SAROKIN
## IN SUPPORT OF FINAL CLASS CERTIFICATION, SETTLEMENT APPROVAL AND
## PLAINTIFFS' APPLICATION FOR AWARD OF ATTORNEY'S FEES AND
## REIMBURSEMENT OF EXPENSES

Pursuant to 28 U.S.C. § 1746, H. LEE SAROKIN hereby makes the following declaration under penalty of perjury in support of final class certification and settlement approval and plaintiffs' application for an award of attorney's fees and reimbursement of expenses.

## INTRODUCTION

1.     My name is H. Lee Sarokin. I am co-counsel for the plaintiffs in this action. I am submitting this declaration in support of final class certification and settlement approval in this case, as well as the plaintiffs' application for an award of attorney's fees in connection with services rendered by me in this action and the reimbursement of expenses incurred by me in the course of this litigation. A true and correct copy of my current *curriculum vitae* is attached hereto as Exhibit "A."

2.     I was appointed to the federal district court for the District of New Jersey in 1979, where I served until 1994, at which time I was appointed to the Court of Appeals for the Third

Circuit. I retired from the Third Circuit in 1996. Since then, I have primarily devoted my time to serving as a mediator. Despite numerous requests, this case represents the first time I have agreed to serve as co-counsel since my retirement from the Third Circuit.

3.      Prior to my appointment to the federal bench, I was an attorney in private practice in New Jersey beginning in 1955. I am currently a member in good standing of the New Jersey Bar and the bars of the Third Circuit Court of Appeals and the United States Supreme Court.

## FINAL CLASS CERTIFICATION AND SETTLEMENT APPROVAL

4.      After flatly rejecting all requests to serve as co-counsel once I retired from the Third Circuit, I agreed to do so in this case because I was moved by the egregiousness of the allegations that the Class Members -- primarily senior citizens -- had been targeted and convinced to invest their life savings in defendant AMERICAN EQUITY's equity indexed annuities. These products would not provide Class Members with the stream of income which they intended to receive unless they incurred substantial surrender charges or unless they were willing to wait until the policies matured -- which from an actuarial standpoint would occur after many of the Class Members have died.

5.      During my seventeen years as a federal judge, I presided over and reviewed numerous Rule 23 class actions. My experience in this regard convinces me that the settlement reached in this case is fair, reasonable and adequate.

6.      The settlement addresses each and every allegation of the class complaint and affords substantial non-economic and economic relief to Class Members. The settlement provides Class Members the regular monthly income which they anticipated receiving when they purchased the product -- without having to pay substantial penalties and surrender charges that

would apply in the absence of the settlement. In addition, under the settlement, Class Members who elect the annuitization benefit will receive a 2% increase to their policy's contract value.

7.     The settlement also allows Class Members who may not believe that the annuitization benefit and 2% enhancement adequately addresses the actual damage they claim to have suffered to pursue Individual Claim Review Relief, which affords a prompt, cost-effective way to resolve any individual claims. As a former federal judge, I thoroughly endorse this aspect of the settlement, which provides for an individual review of a Class Member's claim without the burden and delays of protracted court litigation.

8.     In this respect, the fact that the Class largely consists of senior citizens itself supports final approval of the settlement. These senior citizens simply do not have the luxury of time nor the means to endure further protracted litigation. Again, my experience leads me to believe that further litigation at this point could stretch years into the future, and by the time the case is finally resolved, including any appeals, many of the Class Members may no longer be alive to enjoy the fruits of any victory. The settlement avoids this unfortunate result by providing immediate relief to Class Members in the form of monthly annuitization payments, without penalty, as well as the added bonus of increasing the annuitized amount by 2%.

9.     In addition, as part of the settlement defendant AMERICAN EQUITY has agreed to significant changes in the manner in which it markets and sells equity indexed annuities. This non-economic relief, again directly responsive to plaintiffs' allegations, will help prevent a recurrence of what led to this litigation in the first place. Indeed, the non-economic relief not only inures to the benefit of the Class Members, but to the public-at-large with respect to future prospective customers of defendant AMERICAN EQUITY.

3

## ATTORNEYS' FEES AND EXPENSES

10.     The total number of hours I spent to date on this litigation is 166.  The total lodestar amount for my attorney time based on my current rate is $83,000.00.  A full, true and correct statement of services rendered is attached hereto as "Exhibit "B."

11.     The statement attached as "Exhibit "B" also reflects expenses I incurred to date in this litigation, which total $2,481.00.

12.     The listing of expenses reflected in Exhibit "B" was prepared from expense vouchers and check records kept and maintained in the ordinary course of business.

13.     In my reasoned, professional judgment, the fees and expenses I incurred in this litigation were reasonable and necessary to the prosecution of this complex class action.


I declare under penalty of perjury that the foregoing is true and correct.  Executed this *16* day of August, 2004.


H. LEE SAROKIN


G:\LAW\50015\003\Declarations\Sarokin declaration 2.doc


4

### HON. H. LEE SAROKIN
*Judge, United States Circuit Court*
*(Retired)*



**JUDICIAL EXPERIENCE:**

United States Circuit Judge (Third Circuit)  1994-1996
United States District Court Judge (N.J.)  1979-1994

**JUDICIAL ACTIVITIES:**

Authored over 2,000 written opinions.

Settled approximately 3,000 cases.

Presided over more than 1,000 cases involving all types of federal and diversity jurisdiction issues.

Judge Sarokin, during his seventeen (17) years on the federal bench, has been involved in numerous class action suits, every conceivable federal claim coming before the federal courts and panoply of state issues arising under diversity jurisdiction.

Appointed by Chief Justice Rehnquist to Judicial Conference Committees on judicial improvements, automation, judicial administration and case management.

Twice appointed chair of the Third Circuit Judicial Conference.

Selected as chair of the Quadrennial National Conference of Federal Judges in 1993 and 1997 and served as program chair in 1985 and 1989.

Participant in numerous programs and panels presented to federal judges and lawyers throughout the country.

**PROFESSIONAL CAREER:**

Partner, Lasser Lasser Sarokin & Hochman  1954-1979
Assistant Union County (N.J.) Counsel  1959-1965

As a practicing attorney, litigated complex cases representing both plaintiffs and defendants for 25 years. Represented the County of Union in all of its litigation and contract negotiations.

**EDUCATION:**

B.A. Dartmouth College  1950
J.D. Harvard Law School  1953



EXHIBIT
A

HON. H. LEE SAROKIN RESUME
Page Two

## HONORS AND AWARDS:

Recipient of numerous awards for judicial excellence and temperament from lawyer groups and non-profit organizations.

Listed in Who's Who in America and Who's Who in the Law.

## PROFESSIONAL ASSOCIATIONS:  (Past and Present)

American Law Institute
American Judicature Society, Board Member
American Bar Association
New Jersey Bar Association
Essex County Bar Association

## PROFESSIONAL LICENSES:  Admitted to

New Jersey (State and Federal)
Third Circuit Court of Appeals
United States Supreme Court

## PUBLICATIONS:

"Chair of the Third Circuit Task Force on Attorneys Fees," 771 F.2d.

"Presumed Innocent?  Restrictions on Criminal Discovery in Federal Court Belie This Presumption," 43 Rutgers Law Review 1089 (1991) (co-authored with William E. Zuckerman)

"A Comment on Geoffrey Hazard's Authority in the Dock," 69 B.U. Law Review 477 (1989)

"Beware the Solutions," 90 W. Va. Law Review 1003 (1988)

"Justice Rushed is Justice Ruined," 38 Rutgers Law Review, 431 (1986)

"Recent Innovations in Civil Jury Trial Procedures," Brookings Institution 1993 (co-authored with Tom Munsterman)

## TEACHING/LECTURES:

Judge Sarokin has lectured at law schools throughout the country, including Yale and Harvard.

He has participated in educational programs for federal judges throughout the country.

He has served as a panelist and advisor to the Fred Friendly public television series on the U.S. Constitution entitled "A Delicate Balance."

HON. H. LEE SAROKIN RESUME
Page Three

---

In addition to his many unpublished decisions, opinions by Judge Sarokin have been published in the Federal Reports on the following subjects:

- Cigarette litigation – the Cipollone case – the first verdict against the tobacco industry
- Defamation
- Class action involving discharge of thousands of employees in violation if ERISA
- Civil RICO
- Age discrimination
- 10b-5 stockholder suits
- Bid rigging
- Environmental claims
- Race discrimination – individual and class action suits
- Breach of contract
- Misrepresentation and fraud
- All forms of insurance coverage
- Taxation
- Products Liability
- Negligence
- Breach of trust
- Pension
- Labor
- Gasoline and other franchises
- Credit discrimination
- Employee insurance coverage
- Attorney-client privilege
- EPA violations
- Corporation takeover litigation
- Civil rights
- Patent – validity and infringement
- Trademark
- Unfair competition
- Sex discrimination and harassment
- Generic drugs – look-a-like drugs
- Petroleum Marketing Practices Act

- Education of the Handicapped Act
- Securities and Exchange Act
- Insurer's duty to defend
- Liability of corporate officers for unpaid withholding
- First Amendment
- Wrongful termination for political activity
- Robinson Patman Act
- Anti-trust and monopoly
- Interstate rates for motor carriers
- Injunctions and other equitable relief
- Zoning regulations and restrictions
- Building contracts
- Securities fraud – individual and class actions
- Pension rights
- Trade regulation
- Co-insurance
- Attorneys fees
- Veterans Benefits
- Federal Tort Claims Act
- Bankruptcy
- Punitive damages
- Frivolous lawsuits and sanctions
- Equal Credit Opportunity Act
- Hague Convention on Civil Aspects of International Child Abduction
- Family Educational Rights and Privacy Act
- Fair Housing Act
- FDIC
- Agency
- Contract and business claims
- Foreclosure
- Building and construction contrac

Strube v. American Equity                    H. Lee Sarokin - Time Record

| DATE | SERVICES RENDERED | HOURS | EXPENSES |
|------|-------------------|-------|----------|
| 2/26/2003 | Telephone conference with John Hargrove and prior conversations | 0.5 | |
| 2/27/2003 | Review of pleadings, briefs and court orders submitted; preparation of letter to John Hargrove | 5 | |
| 3/1/2003 | Review of Complaint of Eva Olweean; review of Third Amended Complaint; edit and preparation of report | 3.5 | |
| 3/6/2003 | Review of redlined Third Amended Complaint and preparation of letter reviewing | 2 | |
| 3/10/2003 | Review of video and written deposition of Eva Olweean | | |
| 3/11/2003 | Review of American Equity video tapes; preparation of letter to John Hargrove | 2.5 | |
| 3/14/2003 | Review of cases received and revision of complaint; preparation of comments in connection therewith | 1 | |
| 3/19/2003 | Review of correspondence and cases received from John Hargrove; telephone conversation with John Hargrove | 3 | |
| 3/20/2003 | Review of decision in Barrow v. Bristol-Myers and Aministrative Complaint in Mass. v . Clark, et als. | 1 | |
| 3/22/2003 | Review of correspondence from John Hargrove 3/21/03 and cases enclosed; telephone conference with John Hargrove; correspondence to John Hargrove | 2 | |
| 3/26/2003 | Review of correspondence received from John Hargrove; review of revised amended complaint; preparation of suggested changes | 2 | |
| 3/31/2003 | Review of revised complaint received 3/31/03 | 2 | |
| 4/1/2003 | Review of revised complaint received 4/1/03 and preparation of suggested changes | 1 | |
| 4/3/2003 | Review of revised complaint received 4/3/03 and preparation of suggested changes | 2 | |
| 4/6/2003 | Review of revised complaint received 4/4/03; telephone conference with John Hargrove | 2.5 | |
| 4/12/2003 | Review of correspondence from John Hargrove and filed complaint; correspondence to J.H. | 1 | |
| | | 1 | |



EXHIBIT

B

| Date | Description | Hours |
|---|---|---|
| 4/16/2003 | Review of correspondence from J.H. and Villazon opinion | 0.5 |
| 4/18/2003 | Review of Susan Fixel and Barnett Bank opinions | 0.5 |
| 4/30/2003 | Review of discovery motion and comments thereon | 0.5 |
| 5/13/2003 | Review of defendant's motion to dismiss Third Amended Complaint and supporting memorandum | 2.5 |
| 5/15/2003 | Further review of defendant's motion to dismiss and preparation of suggested Introduction to answer | |
| 6/2/2003 | Review of draft of memorandum in opposition to motion to dismiss; opinion in Powertel v. Bexley | 2 |
| 6/8/2003 | Review of revised draft of memorandum in opposition; defendant's motion to dismiss; preparation of comments and suggestions | 2 |
| 6/11/2003 | Review of further revisions of memorandum; preparation of comments and suggestions | 3 |
| 6/14/2003 | Review of final draft of memorandum | 2 |
| 7/31/2003 | Review of correspondence from JH and memo on class certification; correspondence to JH | 0.5 |
| 8/2/2003 | Review of ISMA documents | 2 |
| 8/11/2003 | Review of letter re Dr. Nye; preparation of proposed areas of inquiry | 1.5 |
| 8/14/2003 | Review of class action opinions; preparation of draft introduction to class certification brief | 1 |
| 8/14/2003 | Review of proposed case management order; motion for punitive damages; correspondence to JH | 3 |
| 9/3/2003 | Review of surrender value charts, motion for punitive damages and JH memo 8/25/03; correspondence to JH | 1 |
| 9/7/2003 | Review of Me emorandum in Support of Motion to Add Punitive Damages; correspondence to JH | 1 |
| 9/11/2003 | Review of American's Motion for Partial Summary Judgment; correspondence to JH | 1 |
| 10/15/2003 | Review of report of David Nye | 1.5 |
| 10/22/2003 | Conference in Ny with JH and Elizabeth Cabraser | 0.5 |
| | | 3 |

| Date | Description | Hours/Amount |
|---|---|---|
| 10/29/2003 | Review of decisions in Cullen v. Whitman; In re Nazi Era: Bradberry v. John Hancock | 1 |
| 11/4/2003 | Telephone conference with JH; preparation of letter re: settlement negotiations | 1 |
| 11/20/2003 | Review of Ressler v. Jacobson;Camden v. Dunkle;Waters v. IPMC; Elkins v. Equitable | 1 |
| 11/23/2003 | Telephone conference with JH; correspondence to JH | 1 |
| 12/1/2003 | Review of Elkins v. Equitable Life documents | 4 |
| | Review of correspondence and draft Senior Protection Regulations | |
| 12/12/2003 | Telephone conference with JH | 1 |
| 1/9/2004 | Telephone conference with JH | 0.5 |
| 1/21/2004 | Review of correspondence from JH and draft of settlement agreement; correspondence to JH | 0.5 |
| 1/30/2004 | Review of Eisenberg/Miller report on fees | 2.5 |
| 1/31/2004 | Telephone conference with JH | 2 |
| 2/6/2004 | Correspondence to JH | |
| | Review of correspondence from JH; telephone conference with JH | 0.5 |
| 2/10/2004 to 2/12/2004 | Travel to and from NY Conference with John Hargrove, Charles Smith and Wendy Carlson Travel expenses: to and from airports | 24 |
| 2/18/2004 | Airfare | $330 361 |
| | Review of correspondence from JH; correspondence to JH | 0.5 |
| 5/2/2004 | Preparation of oral presentation for preliminary hearing | |
| 5/17/2004 | Preparation for preliminary hearing on settlement | 2 |
| 5/18/2004 to 5/20/2004 | Travel and attendance at hearing on application for preliminary approval of class action settlement agreement Travel expense to an from airports | 4 24 |
| | Airfare | $260 $485 |
| 7/25/2004 | Review of proposed final order | |
| 7/27/2004 | Review of Objections and correspondence in | 1 |

| | | |
|---|---|---|
| | connection therewith | |
| 8/7/2004 | Review of Memorandum in Response to Objections; preparation of correspondence in connection therewith | 4 |
| 8/11/2004 | Review of pleadings, briefs and deposition in Malone case | 2 |
| 8/22/2004 to 8/24/2004 | Estimated travel and attendance at final hearing | 4 |
| | Travel expense to and from airports | 24 |
| | Airfare | $260 |
| | **Total expenses** | $785 |
| | **Total hours** | $2,481 |
| | **166 hours @ $500 per hour - lodestar** | 166 |
| | | $83,000 |

# AFFIDAVIT

STATE OF TEXAS                    )
                                  ) ss:
CITY AND COUNTY OF DALLAS)

I, TERRI KNABENSHUE, being duly sworn, depose and say that I am the Advertising Clerk

of the Publisher of THE WALL STREET JOURNAL, a daily national newspaper of general

circulation throughout the United States and published in the locations set forth on the

attached Exhibit A to this Affidavit; that the Notice attached to this Affidavit has been

regularly published in THE WALL STREET JOURNAL for national distribution for TWO

insertion(s) on the following date(s):  7/1/04 AND 7/2/04 ; advertiser: STRUBE V.

AMERICAN EQUITY INVESTMENT LIFE INSURANCE COMPANY and that the

foregoing statements are true and correct to the best of my knowledge.

_Terri Knabenshue_

Sworn to before me this
2nd day of July , 2004.

_Kelly Walker_
Notary Public



```
EXHIBIT
" E "
```

EXHIBIT A

BEAUMONT, TEXAS

BOWLING GREEN, OHIO

CHARLOTTE, NORTH CAROLINA

CHICOPEE, MASSACHUSETTS

DALLAS, TEXAS

DENVER, COLORADO

DES MOINES, IOWA

HIGHLAND, ILLINOIS

LA GRANGE, GEORGIA

NAPERVILLE, ILLINOIS

ORLANDO, FLORIDA

PALO ALTO, CALIFORNIA

RIVERSIDE, CALIFORNIA

SEATTLE, WASHINGTON

SHARON, PENNSYLVANIA

SOUTH BRUNSWICK, NEW JERSEY

WHITE OAK, MARYLAND

**TO:** All persons who are or were insured under a Class A action lawsuit is pending against GE Life and Annuity Assurance Company (formerly known as The Life Insurance Company of Virginia) ("GELAAC"). The Life Insurance Company of Virginia, GE Life and Annuity Insurance Company (now known as GE Life and Annuity Assurance Company), were issued by The Life Insurance Company of Virginia, GE Life and Annuity Insurance Company (now known as GE Life and Annuity Assurance Company) between August 1, 1980 through and including May 20, 2004.

PLEASE TAKE NOTE that a fairness hearing will be held on August 12, 2004 at 2:00 p.m. before the Honorable Duross Fitzpatrick, Judge, United States District Court, Middle District of Georgia, U.S. Courthouse, 475 Mulberry Street, Macon, Georgia 31202 to determine: (1) whether the settlement of the class action should be approved as fair, reasonable and adequate; (2) whether the class action should be dismissed with prejudice pursuant to the terms of the settlement; (3) whether Class Members (as defined below) should be bound by the release set forth in the proposed settlement; (4) whether Class Members should be subject to a permanent injunction that, among other things, bars Class Members from filing, commencing, prosecuting, intervening in, or participating in, (as class members or otherwise) any lawsuit, claim, demand, or proceeding in any jurisdiction that is based on or related to, directly or indirectly, a claim released in or otherwise precluded by the settlement; (5) whether the application of Class Counsel (as defined in the Class Notice) for an award of attorneys' fees, costs, disbursements and expenses and for incentive awards to the Class Representatives should be approved; and (6) whether the Class should be finally certified (the "Fairness Hearing"). The proposed settlement will take effect only if the court approves the settlement.

A detailed Notice of Class Action, Proposed Settlement, Fairness Hearing and Right to Appear describing the settlement and the rights of Class Members (the "Class Notice") has been mailed to Class Members whose addresses are located on GELAAC's permanent policy administration system, as directed by the Court. Because the proposed settlement and the scheduled court hearing may affect the rights of Class Members, if you are a Class Member or believe that you might be a Class Member and have not received a copy of the Class Notice, you should immediately obtain a copy by contacting the McBride Settlement Administrator as set forth below.

**1. The Settlement Class.** The Court has preliminarily certified a Class of policyowners for settlement purposes only. Subject to certain limited exceptions set forth in the Class Notice, the Class consists of all persons who are or were current or former owners of certain flexible premium adjustable life insurance policies (as described in the Class Notice) that were issued by The Life Insurance Company of Virginia, GE Life and Annuity Assurance Company, or American Agency Life Insurance Company from August 1, 1980 through and including May 20, 2004 (the "Class" or "Class Members").

**2. The Class Action and Issues Involved.** Plaintiffs allege that GELAAC breached its insurance contracts with Class Members by demanding additional or higher premiums to keep Class Members' Class Policies (as that term is defined in the Class Notice) in force and also challenge GELAAC's sales and marketing practices. Specifically, plaintiffs allege that they received contractual promises that (i) the premiums on Class Policies would stay level and never change over the life of the policy; (ii) the premiums on such policies would stop or "vanish" after a certain period of time; and/or (iii) only one initial premium would ever be due for such policy. Plaintiffs also complain that GELAAC improperly reduced credited interest rates and increased policy charges, including costs of insurance rates. Plaintiffs also allege that GELAAC wrongfully designed, marketed, sold, and administered Class Policies owned by Class Members. The settlement resolves all disputes concerning Class Members' premium obligations for each Class Policy.

**3. Choices and Deadlines for Class Members.** For each of their Class Policies, Class Members must decide whether to:

• **Remain in the Class, not object to the settlement terms, and apply for a Settlement Remedy** (as that term is defined in the Class Notice). If you have a Grievance (as that term is defined in the Class Notice) covered in the settlement, to remain in the Class and want to apply for a Settlement Remedy you must fill out, sign and timely return a "Requested Relief Form" (as described in the Class Notice) so that it is postmarked by November 10, 2004, or if not postmarked, received by the McBride Settlement Administrator by November 15, 2004. You can obtain a Requested Relief Form from the McBride Settlement Administrator as set forth below. By not excluding yourself from the Class, your right to participate in any other lawsuit involving a claim released or otherwise precluded by the settlement will be affected. If this is what you choose to do, your interests will be represented without cost to you by the plaintiffs and Class Counsel.

• **Remain in the Class, not object to the settlement terms, and not apply for a Settlement Remedy.** If you do not have a Grievance covered by the settlement, or do not want to apply for a Settlement Remedy, you do not have to do anything. If you do nothing, you will be in the Class but will not be considered for a Settlement Remedy. By not excluding yourself from the Class, your right to participate in any other lawsuit involving a claim released or otherwise precluded by the settlement will be affected. If this is what you choose to do, your interests will be represented without cost to you by the plaintiffs and Class Counsel.

• **Remain in the Class but object to any aspect of the settlement terms.** If you choose this option, you must file a written objection with the Court no later than July 28, 2004. If you want to speak at the Fairness Hearing, you must also file with the Court by July 28, 2004 a "Notice of Intention to Appear at the Fairness Hearing." More information about how to file a written objection and to speak at the Fairness Hearing can be obtained from the McBride Settlement Administrator as set forth below. Class Members who object to the settlement may nonetheless apply for a Settlement Remedy by following the procedures set forth in the Class Notice. By not excluding yourself from the Class, your right to participate in any other lawsuit involving a claim released or otherwise precluded by the settlement will be affected.

• **Exclude yourself from the Class.** If you choose this option, you must send a written request for exclusion. Your request for exclusion must be received by July 28, 2004 and must comply with the requirements in the Class Notice. If you request exclusion, you will not be able to object to the settlement, and you will not be able to participate in the settlement or apply for a Settlement Remedy. More information about how to exclude yourself from the Class can be obtained from the McBride Settlement Administrator as set forth below.

**4. Settlement Remedies.** Qualifying Class members who do not exclude themselves from the Class may be entitled to a Settlement Remedy. The types of Settlement Remedies available and the requirements to receive such a remedy are set forth in the Class Notice. Class Members may receive only one Settlement Remedy per Class Policy. If you remain in the Class and do not qualify for or later fail to meet the requirements to continue to receive a Settlement Remedy, or if you exclude yourself from the Class, your Class Policy will continue to be interpreted and administered by GELAAC in accordance with Pre-Settlement Policy Administration (as that term is defined in the Class Notice). You should be aware that under Pre-Settlement Policy Administration the premium for your Class Policy can increase.

**5. Preliminary and Permanent Injunction.** The Court has preliminarily enjoined all Class Members who do not timely exclude themselves from the Class and all persons acting on behalf of or in concert with any such Class Member from, directly or indirectly, (i) filing, commencing, prosecuting, continuing, litigating, intervening in, or participating in (as class members or otherwise) any lawsuit, claim, demand, or proceeding in any jurisdiction that is based on or related to, directly or indirectly, in whole or in part, the allegations, facts, subjects or issues set forth or raised in the McBride class action, the Causes of Action, and/or the Released Conduct (as those terms are defined in the Class Notice); and (ii) organizing or soliciting Class Members or opt-outs into a separate class for purposes of pursuing as a purported class action any lawsuit (including by seeking to amend a pending complaint to include class allegations or seeking class certification in a pending action) in any jurisdiction on behalf of Class Members or opt-outs that is based on or related to, directly or indirectly, in whole or in part, the allegations, facts, subjects or issues set forth or raised in the McBride class action, the Causes of Action, and/or the Released Conduct (as those terms are defined in the Class Notice). If and when the settlement is approved, plaintiffs and GELAAC will ask the Court to enter a permanent injunction which will be similar to the preliminary injunction described above. All Class Members who have not excluded themselves from the settlement will be bound by the permanent injunction.

**6. Release.** If the proposed settlement is approved by the Court, all individual and class claims asserted in the McBride Class Action lawsuit will be dismissed on the merits and with prejudice. Class members who do not exclude themselves from the Class may not assert these claims in any other lawsuit or proceeding. In addition, in exchange for the benefits provided under the proposed settlement, Class Members will release GE Life and Annuity Assurance Company, The Life Insurance Company of Virginia, and American Agency Life Insurance Company and others described in the Class Notice from liability for certain claims. Such claims include those arising from or related to, among other things, the design, development, sale, marketing, administration, modification, servicing, underwriting, performance, premiums, cost of insurance charges, cost of insurance rates, coverage, maturity date, policy loans, replacements, commissions, taxes, surrender charges, credited interest, expense charges, or other costs of any Class Policy. The release is printed in full in the Class Notice and can be viewed on the settlement website at www.mcbridesettlement.com.

**7. Attorneys' Fees, Costs, Disbursements, and Expenses and Plaintiffs' Incentive Awards.** At the Fairness Hearing Class Counsel will apply to the Court for an award of attorneys' fees, costs and expenses not to exceed $25 million, in the aggregate, to be paid by GELAAC. Class Counsel will also request that incentive awards be paid to the Class Representatives. The requested awards will range from $10,000 to Robert C. McBride to $2,500 to each of the three other Class Representatives. GELAAC will not oppose the application by Class Counsel for these awards. GELAAC will also pay any costs arising from notifying the Class and administering the proposed settlement.

NEITHER THE PAYMENT OF ATTORNEYS' FEES, COSTS AND EXPENSES TO CLASS COUNSEL NOR THE PAYMENT OF THE INCENTIVE AWARDS WILL REDUCE ANY FUNDS OR BENEFITS BEING MADE AVAILABLE TO THE CLASS. CLASS MEMBERS WILL NOT BE REQUIRED TO PAY ANY PORTION OF CLASS COUNSEL'S ATTORNEYS' FEES, COSTS OR EXPENSES OR THE INCENTIVE AWARDS.

**8. Communication With Class Members/Solicitation Of Opt-Outs.** The Court has ordered that no attorney, or his/her agent(s), shall be allowed to initiate communication with Class Members (through advertisements or otherwise) about the settlement without prior approval from the Court and without prior notice to Class Counsel and counsel for GELAAC. If you receive any communications or see any advertisement regarding the settlement, you should report it to the McBride Settlement Administrator at 1 (866) 808-3582.

**9.** Further Information. This is only a short summary of the proposed settlement. Further details are included in the Class Notice. If you are a Class Member or believe you may be a Class Member, and you need further information about the terms of the settlement, please contact the McBride Settlement Administrator as set forth below.

**10.** Contacting the McBride Settlement Administrator. The McBride Settlement Administrator can be reached by calling toll-free at 1 (866) 808-3582 Monday through Friday, 9:00 a.m. through 5:00 p.m. Eastern Time or by writing to P.O. Box 9000 #6213, Merrick, NY 11566-9000. Class Members can view and print a copy of the Class Notice and the Requested Relief Form at www.mcbridesettlement.com.

July 2, 2004
Mr. Gregory C. Leonard
Clerk, United States District Court
Middle District of Georgia

**1 (866) 808-3582 — www.mcbridesettlement.com**