**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**CHARLES W. STRUBE, et. al.,**

    **Plaintiffs,**

vs.                                                         **Case No. 6:01-cv-1236-Orl-19DAB**

**AMERICAN EQUITY INVESTMENT**
**LIFE INSURANCE COMPANY, an**
**Iowa Corporation,**

    **Defendant.**

_____

**ORDER**

This case comes before the Court on the [Unopposed] Motion for Award of Attorney's [sic] Fees with Incorporated Memorandum of Law, filed by Plaintiffs Charles W. Strube, *et. al.*, on February 10, 2005. (Doc. No. 251).

**Background**

On February 8, 2005, this Court entered an Order certifying the class in the instant class action suit and approving the parties' Amended Stipulation of Settlement. (*See generally* Doc. No. 250). On February 10, the Plaintiffs filed the instant motion, seeking attorneys' fees in the amount of $1.7 million, pursuant to the settlement agreement. Such award is unopposed by the Defendant. (*See* Doc. No. 251). In light of the Notice of Appeal of the Court's February 8th Order filed by Beverly Malone, the Court reserved ruling on Plaintiff's motion for attorneys' fees until such time as all appeals had been decided by the United States Court of Appeals for the Eleventh Circuit. (*See* Doc. No. 284). As the

appellate court has rendered a decision on the appeal and the time for appeal has now expired, (*see* Doc. No. 286), the Court will analyze the pending unopposed motion for attorneys' fees. (Doc. No. 251).

## Standard of Review

Attorneys in a class action in which a common fund is created are entitled to compensation for their services from the common fund, but the amount is subject to court approval. *See* Fed.R.Civ.P. 23(e). Under what has come to be known as the "common benefit" doctrine, fee reimbursement is permitted (1) when litigation indirectly confers substantial monetary or non-monetary benefits on members of an ascertainable class; and (2) when the court's jurisdiction over the subject matter of the suit and over a named defendant who is a collective representative of the class make possible an award that will operate to spread the costs proportionately among class members. *See Mills v. Electric Auto-Lite Co.,* 396 U.S. 375, 394 (1970); *Camden I Condominium Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 771 (11th Cir. 1991).

The approach to determining an appropriate fee award in this Circuit is to examine the proposed fee as its percentage of the total recovery. *See, e.g., Camden I*, 946 F.2d at 774. In determining whether a given fee is reasonable, a court should first ensure that the parties' agreement regarding the proposed fee was not collusive; that is, that the fee-negotiations were conducted at arms-length and only after all material terms of the settlement had been agreed upon. *See*, *e.g., Elkins v. Equitable Life Ins. of Iowa*, Case No. CivA96-296-Civ-T-17B, 1998 WL 133741, at *34 (M.D. Fla. Jan. 27, 1998). If a court so finds, great weight should be given to the negotiated fee in considering whether the fee is appropriate. *Johnson*

*v. Georgia Highway Express, Inc.*, 488 F.2d 714, 720 (5th Cir. 1974) (abrogated on other grounds). A district court "has great latitude in formulating attorney's fees awards subject only to the necessity of explaining its reasoning..." *McKenzie v. Cooper*, *Levins & Pastko, Inc.*, 990 F.2d 1183, 1184 (11th Cir.1993) (internal quotation omitted).

The Eleventh Circuit has stated that the majority of common fund fee awards fall between 20% and 30% of the fund, and as a general rule the uppermost limit of recovery should be 50% of the fund. *Camden I,* 946 F.2d at 774-75. However, to avoid the problems associated with a percentage that may appear to be arbitrarily assigned, lower courts are directed to "articulate specific reasons for selecting the percentage upon which the [award] is based [and] identify all factors upon which it relied and explain how each factor affected its selection of the percentage of the fund awarded as fees." *Id.* at 775. Such factors to be considered include, but are not limited to: (1) the results obtained on behalf of class members; (2) the economics involved in prosecuting the suit and the experience of counsel; (3) the customary fee for similar cases; (4) the time and labor expended and required in the class action; and (5) the reaction of the class to the proposed fee award. *See, e.g., id.*; *Elkins,* 1998 WL 133741, at *34-37. Finally, while the Eleventh Circuit has held that the "lodestar method" is not a proper calculation of fee awards in common fund cases, courts are permitted to use such figures as a comparison for determining the reasonableness of a proposed fee award. *See Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1298 (11th Cir. 1999).

**Analysis**

In accordance with Section VIII of the settlement agreement, Plaintiffs' counsel have requested attorneys' fees in the total aggregate amount of $1.7 million, and the Defendant

has agreed to pay such fees. After examining the motions and evidence presented by the parties, the Court concludes that the proposed fee award is reasonable and fair with respect to both parties and all class members. The Court has analyzed the proposed fee award with respect to all of the factors enumerated above, and finds that the unopposed motion for award of attorneys' fees should be granted.

### A. Arms-length Agreement

First, the Court finds that the proposed attorneys' fee award was not the result of collusion but rather was arrived at pursuant to an arms-length negotiation between the parties. In the instant case, the issue of attorneys' fees was never discussed, let alone agreed upon, until the parties had fully agreed to the terms of the class settlement through mediation. (*See, e.g.*, Doc. No. 251, ¶ 4; Ex. A; Ex. B; Ex. C). Furthermore, as was the case in *Elkins*, both parties had an incentive to bargain vigorously and in good faith. Plaintiffs' counsel sought to maximize its fees, and Defendant was aware that because the terms of the settlement had already been agreed upon, it could bargain for lower fees using the risk of delay and the potential conflict of interest which could have arisen if Plaintiffs' counsel delayed settlement for a higher fee. *See Elkins,* 1998 WL 133741 at *34. For these reasons, the Court concludes that "a very favorable result was obtained ... as the result of the intensive, yet efficient, efforts" of counsel for both sides. *Id*. Thus, great weight should be given to the negotiated fee in considering whether the fee is appropriate. *Johnson,* 488 F.2d at 720.

### B. The Results Obtained

The settlement agreement in the instant case involves a creative and efficient three-

pronged approach to insure both relief to the class members and good-faith participation by the insured. The agreement involves a two-tiered settlement structure which either provides an immediate 2% annuitization bonus to the value of the policies of the individual class member or allows such class member to forego such relief in order to pursue more individualized relief in front of an impartial Claims Review Panel. (See Doc. No. 250, pp. 9-11). In addition, the settlement includes valuable non-economic relief such as enhanced training for the employees of Defendant regarding ethical and legal standards and committee monitoring of post-approval awards. *See id.*

Plaintiffs have investigated the strengths and weaknesses of their case and candidly state that the settlement agreement provides nearly all of the relief to the class members that they could have achieved at the culmination of a lengthy trial while reducing expenses to both parties and insuring the financial viability of Defendant. Furthermore, such agreement provides financial benefits to the class more quickly, an important aspect considering many of the class members are elderly. (*See* Doc. No. 286 at p. 5, where the Eleventh Circuit noted that "the ages of the class members make time of the essence in the disposition of this case").

### C. The Economics Involved and the Experience of Counsel

The fact that attorneys have assumed the prosecution of an action based on a contingent fee award is an important factor in determining the reasonableness of such fee award. *See Jones v. Central Soya Co.*, 748 F.2d 586, 591 (11th Cir. 1984). In the instant case, Plaintiffs' counsel prosecuted the action on an "at-risk" contingent fee basis, while defense counsel were paid on a current basis. (*See, e.g.*, Doc. No. 251, pp. 8, 26 at ¶¶ 7-10).

Thus, the Court notes that it is important to provide "incentives to experienced counsel who take on complex litigation cases on a contingent fee basis so those cases can be prosecuted effectively." *Elkins*, 1998 WL 133741 at *35. In addition, as explained in the following sections, Plaintiffs have not requested an unusually large percentage of the total recovery, nor have they requested fees representing a "premium" over their ordinary hourly rates.

### D. The Customary Fee in Similar Cases

The requested fee in the instant case is below the typical range of common fund awards to counsel in other class actions prosecuted in federal district courts located within the State of Florida. The Eleventh Circuit has stated that the majority of common fund fee awards fall between 20% and 30% of the fund. *Camden I,* 946 F.2d at 774-75. In the instant case, the proposed settlement has been valued at a minimum of $14.7 million, not including the important benefits of the non-economic relief discussed above. (Doc. No. 250, p. 18). Thus, Plaintiffs' counsel is seeking an amount equivalent to less than 9% of the common fund, a figure well below the typical range.

### E. The Time and Labor Required

Furthermore, the proposed fee award is also comparable to the ordinary rate charged by Plaintiffs' counsel, and the evidence presented demonstrates that counsel has not attempted to earn an unwarranted "premium" for their services. Under current law, courts are permitted to use lodestar figures as a comparison for determining the reasonableness of a proposed fee award. *See Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1298 (11th Cir. 1999). In the instant case, the parties seek approval of $1.7 million fee award, which includes both fees and expenses. The lodestar fees of all of Plaintiffs' counsel amount to

-6-

$1,752,510.00 as of April 19, 2006, *irrespective* of expenses.[1] (emphasis added). Thus, even under the lodestar method, the proposed fee award appears reasonable.

### F. The Reaction of the Class

The fees and expenses in the instant case were made a part of the class-wide notice in the case at bar. (*See, e.g.,* Doc. No. 218, Ex. D.). The parties have included a copy of the published notice with the unopposed motion for attorneys' fees. No objections were filed regarding the proposed fee agreement. In fact, the three objectors to the class settlement did not object to the award of attorneys' fees as part of their motions. The lack of objections to a proposed fee award is itself important evidence that the fee arrangement is reasonable. *See, e.g., Elkins*, 1998 WL 133741 at *36.

For these reasons, the Court will grant the unopposed motion for the award of attorneys' fees.

### Conclusion

Based on the foregoing, the Court **GRANTS** the Motion for Award of Attorney's Fees with Incorporated Memorandum of Law, filed by Plaintiffs Charles W. Strube, *et. al.*, on February 10, 2005. (Doc. No. 251). The $1.7 million fee award in the instant case shall be paid in accordance with the Amended Stipulation of Settlement. (Doc. No. 250).

**DONE** and **ORDERED** in Chambers in Orlando, Florida this _5th__ day of May, 2006.

---

[1] *See* Doc. No. 251, pp. 26-27 (Affidavit of John R. Hargrove) and Doc. No. 251, pp. 43 (Affidavit of H. Lee Sarokin). Plaintiffs' counsel has incurred an additional $190,000.00 in expenses. (*See id.* at pp. 27, 43).

PATRICIA C. FAWSETT, CHIEF JUDGE
UNITED STATES DISTRICT COURT

Copies furnished to:

Counsel of Record